## HAMILTON INV. CO. et al. v. BOLLMAN.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1920. Rehearing Denied December 9, 1920.)

No. 2746.

1. **Judgment** ⊜═263(1)—**Declaration advising defendants of nature and extent of claim good against motion in arrest.**

Where the declaration clearly advised defendants of the nature and extent of the claim that would be presented, it is good as against a motion in arrest, if the facts which the jury were warranted in finding constitute a cause of action.

2. **Trial** ⊜═320—**Supplying blank forms of verdict is matter of accommodation, and not legal requirement.**

Responsibility for returning a true verdict is on the jury, and it is a matter of accommodation, and not a legal requirement, for the judge to supply blank forms.

3. **Appeal and error** ⊜═866(3)—**Sufficiency of evidence only reviewable question under assignment for failure to direct verdict.**

On writ of error in an action at law, the only reviewable question under an assignment of error complaining of the refusal to direct a verdict is whether there was sufficient evidence to warrant a finding against appellant.

4. **Conspiracy** ⊜═9—**That plaintiff should not have been deceived by fraudulent scheme is not a defense.**

It is not a defense to an action for damages for a conspiracy to obtain plaintiff's property by fraud that he, as a successful and supposedly prudent business man, ought not to have been deceived by the fraudulent scheme.

5. **Conspiracy** ⊜═13—**Defendant a party to conspiracy to defraud, though making no representations.**

Where parties purchasing the stock and business of the B. Company, and paying a part of the price in notes on which the B. Company was to be liable, obtained most of the cash payment from the defendant corporation, and without further consideration transferred accounts receivable of the B. Company, constituting practically all of its liquid assets, to the corporate defendant, making plaintiff's claim uncollectable, the individual defendant, president of the corporate defendant, *held* a party to the conspiracy to defraud, though he made none of the false representations inducing the sale.

6. **Corporations** ⊜═426(10)—**Liable to party defrauded by its president, when receiving and retaining fruits of conspiracy.**

Where defendant's president participated in a conspiracy to defraud plaintiff of his property, and defendant received and retained, without paying therefor, fruits of the conspiracy of greater value than the amount recovered by plaintiff, it was liable to plaintiff.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Otto Bollman against the Hamilton Investment Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

John W. Creekmur and Donald J. De Wolfe, both of Chicago, for plaintiffs in error.

John G. Campbell and Herman A. Fischer, both of Chicago, for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

BAKER, Circuit Judge. This is a writ of error by two of the defendants to reverse a judgment at law based on a jury's verdict.

Bollman sued for damages sustained through the defendants' alleged conspiracy to obtain property from him by fraudulent means.

[1] No challenge was offered to the sufficiency of the declaration until after verdict. We think it clearly advised the defendants of the nature and extent of the claim that would be presented. So, if the facts which the jury were warranted in finding from the evidence constituted a cause of action, the declaration was good as against a motion in arrest.

We find no material, if any, variance between allegations and proofs.

In the charge to the jury the trial judge fully and accurately stated the law of conspiracy in civil cases and adequately covered all other legal matters arising from the issues.

[2] Complaint is made that the judge did not give to the jury forms of verdict providing for a several finding of guilty or not guilty on the part of these plaintiffs in error. But the judge's charge called the jury's attention to that contingency. Counsel furnished no forms to be submitted, and they called attention to the matter only after the verdict had been received. Responsibility for returning a true verdict was on the jury. It was a matter of accommodation, not of legal requirement, that led the judge to supply blank forms.

[3] Practically the whole contention in briefs and oral argument is that the court erred in refusing to direct a verdict of not guilty. Prolonged discussion of evidence introduced by defendants, and of affidavits filed in support of a motion for a new trial, and of what inferences should be drawn from conflicting evidence, together with the conclusion that the judgment should be reversed because it is contrary to "the weight of the evidence," indicate that counsel are not apprised of the limitations of review on a writ of error. Under the instant assignment of error the only reviewable question is: Was there sufficient evidence to warrant a finding of legal liability substantially as charged?

From the testimony of Bollman and his witnesses, including a deposition of Ruler, one of the alleged conspirators, which the verdict shows that the jury accepted as true, the case may shortly be outlined as follows: Bollman owned all of the 1,000 shares of Bollman Piano Company of St. Louis. Four shares were in the names of nominal directors; the remainder stood in Bollman's name. Bollman was ill, and desired to sell his business and go away to recuperate. This was

known to Piper and Ruler, of St. Louis, and they wanted to get control of the company. Hamilton Investment Company, of Chicago, was a corporation engaged in making usurious loans to mercantile concerns under the guise of buying their accounts receivable at heavy discounts. Rees was president of the Hamilton Company, with general authority. Mudge (also a defendant, but "not found") was a subordinate agent of the Hamilton Company. Piper and Ruler got in touch with Mudge. The plan was for Piper and Ruler to buy through Mudge as a "straw man." To this end Mudge was to and did pose as a man of large means, with a prosperous and growing business, a residence on the shore of the lake at Chicago, a yacht lying out in front, etc. His first proposal was to pay all cash for Bollman's business, if the price was satisfactory. When Bollman fixed a price that would require Mudge (for Piper, Ruler, and himself) to produce $234,200 in cash, Mudge professed that the volume and demands of his business were now such that he could not immediately spare more than $140,000 in cash. Bollman finally agreed to take for the balance notes on which the Bollman Company should be liable, to be secured by a pledge of the stock when it should be assigned to Mudge. Piper, Ruler, and Mudge were counting on getting the major portion of the $140,000 from Rees, who had control of the Hamilton Company's funds. Rees, for the Hamilton Company, was desirous of getting his fingers into the Bollman Company's accounts receivable. He knew he could not do this while Bollman owned the business. He was willing to help Piper, Ruler, and Mudge get control, so that he could handle the accounts receivable of the Bollman Company. On June 14th Mudge telephoned Rees to come to St. Louis. On the 15th Piper, Ruler, Mudge, and Rees had an extended conference at a hotel room. The situation was gone over. Rees was informed that they wanted $105,000 from him. On the 16th those four men met Bollman at his attorney's office. A contract between Bollman and Mudge was drawn. Bollman and his directors signed resignations. But title and control were not to pass until the 17th, when the certified check for $140,000 and the several notes were to be exchanged for the contract and resignations. On the 16th Rees furnished Mudge $105,000. Piper opened an account with a St. Louis bank that never had had any relation with the genuine Bollman Company. Piper deposited the $105,000 to the credit of "Bollman Company by E. J. Piper, President," and checks so signed were to be honored by the bank. Piper increased his bank credit by giving the bank his note signed in the name of "Bollman Company by E. J. Piper, President," and by depositing a check on the genuine Bollman Company bank account signed in the same way, and thus the sum of $140,000 was available. All of the above-recited plan was unknown to Bollman. He relied upon the manufactured appearances being true. Piper, Ruler, and Mudge were irresponsible. On the 16th the "Bollman Company, by E. J. Piper, President," and the "Hamilton Company, by Evan Rees, President," signed a contract whereby the Hamilton Company was to have the handling of the genuine Bollman Company's accounts receivable (then the property of Bollman) at a profit of 3 to 4 per cent. a month. On the 17th Piper procured from his bank

a "cashier's check" for $140,000 and gave it to Mudge. Then Piper, Ruler, Mudge, and Rees met Bollman and his attorney at the attorney's office, and the respective deliveries of documents were made by Bollman and by Mudge as the contracting parties. At this meeting false representations of Piper, Ruler, and Mudge were continued. Rees was silent. On leaving the meeting Piper, Ruler, and Mudge took control of the genuine Bollman Company, and in pursuance of their arrangement with Rees delivered to Rees, for the Hamilton Company, and without any consideration except the $105,000 furnished the day before by Rees to Mudge, $150,000 of Bollman Company's accounts receivable. The proximate cause of Bollman Company's bankruptcy and Bollman's loss on the deferred payments for the purchase of his property was the above-stated abstraction of the major portion of Bollman Company's net assets—practically all of its liquid assets.

Stripped to its nakedness the scheme was to take $140,000 worth of Bollman's property, without his knowledge or consent, and with it to procure the cash with which to make the down payment on the purchase of Bollman's property, which he had been induced to part with for less than all cash on the fiction of Mudge's responsibility.

True, there is evidence in the record on which a finding of not guilty on the part of these plaintiffs in error might be based; and the foregoing statement is not to be taken as a finding of facts by this court. It is simply a recital of the evidence that is favorable to Bollman.

[4] There is nothing in the suggestion that Bollman, a successful and supposedly prudent business man, ought not to have been deceived. Conspirators who successfully carry through a scheme to defraud will not be heard to complain of the stupidity of their dupe.

[5, 6] Contention is advanced that the facts as stated fail to constitute a cause of action against these plaintiffs in error, because Rees (for the Hamilton Company and himself) made no false representations, and because, even conceding a moral obligation, there was no legal duty on his part to speak when the others in his presence were beguiling Bollman. Thus Rees is draped as an innocent bystander, who had no interest in the transaction. But that is contrary to the jury's finding that Rees was a coconspirator, and that the one sum of $105,000 was used twice—first, as an advance to Mudge with which to enable Piper, Ruler, and Mudge to get control of the Bollman Company; and, second, as the pretended consideration for taking $150,000 of the Bollman Company's accounts receivable, thus depleting the assets on which Bollman was partially relying as security for the deferred payments. And the Hamilton Company was holdable on the same evidence, because it received and retained without paying therefor fruits of the conspiracy of greater value than the amount of the verdict. Dorsey Machine Co. v. McCaffrey, 139 Ind. 545, 38 N. E. 208, 47 Am. St. Rep. 290; Johnston-Fife Hat Co. v. National Bank of Guthrie, 4 Okl. 17, 44 Pac. 192; American National Bank v. Hammond, 25 Colo. 367, 55 Pac. 1090.

The judgment is affirmed.