SCHOTT ET AL., APPELLANTS, *v.* BANK OF ELMORE CO., APPELLEE.

(Decided May 22, 1939.)

*Mr. Lionel Levy* and *Mr. Wm. H. McLellan*, for appellants.

*Messrs. Graves & Duff,* for appellee.

OVERMYER, J.   This appeal on questions of law is prosecuted to reverse the order of Common Pleas Court in this case, directing a verdict for appellee, The Bank of Elmore Company, and entering judgment thereon, upon the motion by appellee at the opening of trial and upon the ground that the petition did not state a cause of action.

The action was brought to recover from the bank the approximate sum of $11,000 as damages for fraud alleged to have been perpetrated by the bank upon the plaintiffs, appellants here, in connection with a transaction involving the sale of a farm by appellants to one Fred A. Damschroeder in 1920.

The basis of the oral motion for a directed verdict and its sustention, according to the briefs and argument and the oral pronouncement of the court, was the claim of *ultra vires*.

We have examined the petition herein in the light of a number of authorities on the subject of *ultra vires*.   Conceding that the part played by the bank through its cashier, as alleged in the petition, was *ultra vires,* it would not necessarily follow that the petition is not good and that every *ultra vires* act and transaction on the part of a bank or its officers can be excused upon that ground, or that the bank can escape

liability upon that plea. 13 American Jurisprudence, 782, Section 752 *et seq.* · However, this action is one in tort for fraud allegedly practiced by the bank through its cashier upon appellants, to their damage. The defense of *ultra vires* arises generally in connection with actions against banking and other corporations based upon contracts. The present action, as above stated, is based upon alleged tort.

"The general rule is now that a corporation · is liable for its torts despite the *ultra vires* nature of the transaction in which they occur, and that the doctrine of *ultra vires* has no proper application in a consideration of the liability of a corporation for its torts. This view is taken even in jurisdictions which allow corporations the greatest latitude in defending on *ultra vires* contracts. This rule has been applied to the torts involved in the following cases: * * * torts occurring in the *ultra vires* transactions of state or national banking associations." 13 American Jurisprudence, 1047, Section 1121.

The petition herein alleges that the appellants "on or about March 1, 1920, went to said bank and retained and paid said defendant bank to represent them in drawing the necessary papers for the consummation of said sale, and for advice necessary and incidental thereto, and said defendant [bank] by one Edward P. Carsten, who was then the cashier of said defendant, accepted said employment and thereupon counseled and advised these plaintiffs * * *," and then follow the various allegations of false and fraudulent representations relied upon as having been made by the cashier as to the solvency, reliability, trustworthiness and collectibility of Damschroeder, a customer of said bank, to appellants, also general customers of the bank; and the facts withheld by said cashier of which he then had knowledge as to the debts of Damschroeder to the bank; the belief and reliance

placed by appellants upon such representations and their loss and damage resulting therefrom.

There is also alleged the later acts of the appellee bank, through its then cashier Carsten, when appellants' note of $9,000 against Damschroeder became due, whereby appellants accepted certain renewal notes and a mortgage on another farm owned by Damschroeder represented as securing said notes, the mortgage reciting that the premises were free and clear of all encumbrances, when in fact the appellee bank then held several mortgages on said farm to itself, and the mortgage obtained by the bank for appellants from Damschroeder was wholly worthless, which the bank then knew to be so.

The question then is whether the allegations of the petition state a cause of action against the bank. We have not recited all the allegations of the petition, but have summarized them only to show generally the claims made therein. That a corporation may be liable for the torts of its officer or officers is shown by many authorities which might be cited.

"In accordance with a well-established rule of the law of agency, a corporation is bound by the knowledge acquired by, or notice given to, its officers or agents which is within the actual or apparent scope of their authority or employment and which is in reference to a matter to which their authority or employment extends." 13 American Jurisprudence, 1035, Section 1110 et seq.

In the instant case, the alleged fraudulent and worthless mortgage and notes alleged to have been obtained by the bank from Damschroeder, for the security of appellants, after the original and unsecured note became due and unpaid, were made payable to the bank and the mortgage was recorded in the name of the bank and later assigned to appellants. It would appear that such transaction, if made as alleged, would ap-

pear on the books of the bank and if so would be actual knowledge to the bank.

"He [the cashier] is the executive officer of the bank by whom its debts are received and paid and its securities taken and transferred, and through whom the whole financial operations of the bank are conducted. * * * The powers and duties of a cashier, in virtue of his office, are much greater than the president's though his office is strictly executive. In fact, the cashier generally has greater inherent powers than any other bank officer." 4 Michie on Banks and Banking (Perm. Ed.), 96 and 97, Section 8a.

As to bank officers' acts in dealings with third persons binding the bank, see also: *Indiana Quarries Co.* v. *Angier Bank & Trust Co.,* 190 N. C., 277, 129 S. E., 619; *Murray, Supt.,* v. *First Trust & Savings Bank of Sibley,* 201 Iowa, 1325, 207 N. W., 781; *Citizen's Bank of Wind Gap* v. *Lipschitz,* 296 Pa., 291, 145 A., 831; *Emery* v. *Third National Bank of Pittsburgh,* 308 Pa., 504, 162 A., 281; *National Bank* v. *Graham,* 100 U. S., 699, 25 L. Ed., 750; *People's Bank* v. *National Bank,* 101 U. S., 181, 25 L. Ed., 907; *National City Bank* v. *Carter,* 31 F. (2d), 25; *Johnston Fife Hat Co.* v. *National Bank of Guthrie,* 4 Okla., 17, 44 P., 192; *Hindman* v. *First National Bank of Louisville,* 112 F., 931, 57 L. R. A., 108; *Sturges & Co.* v. *Bank of Circleville,* 11 Ohio St., 153, 78 Am. Dec., 296; *Nevada Bank of San Francisco* v. *Portland National Bank,* 59 F., 338.

Where an innocent third person has changed his position in reliance on a bank's acts, the bank cannot escape liability on the ground of its officer's fraud. *Bank of Palmetto* v. *Marine Bank & Trust Co.,* 292 F., 983.

Many more cases might be cited on the general subject here involved, and many others are cited in appellants' brief, while no cases are cited in appellee's brief to the contrary or otherwise.

When it is alleged, as it is in the petition herein,

that the chief executive officer of a bank makes representations to A, a customer of the bank, such as here alleged were made, regarding the solvency and financial standing of B, another customer of the bank, and as to the safety of the latter's unsecured paper, thereby misleading A, to his great damage and loss, the cashier knowing at the time of the unsecured indebtedness then owing his bank by B so recommended, as a result of which representations B is enabled to acquire from A on a down payment of less than one-fourth with an unsecured note for the balance, valuable property, enabling B later to secure the bank on B's indebtedness to it; and the cashier later, when B's unsecured note to A was not paid, arranging a deal whereby new notes are secured ostensibly for the security of A but taken in the name of the bank, secured by a worthless mortgage, also ostensibly for the protection of A but made to the bank and recorded in the name of the bank, warranting the premises free of encumbrances, and all the while such chief executive officer of the bank is alleged to have been withholding from A knowledge which he is alleged to have had and as such officer was bound to have, of the preexisting mortgages of B held by the bank which made the security mortgage to A, wholly worthless; and by the allegations of the petition such bank being paid for such transaction, and such bank being thereby benefited and by the holding of all papers and securities to make itself more secure as against the indebtedness of B, as a result of all of which A is damaged and suffers great loss—all of these allegations and others appearing in the petition, we are of the opinion that under all the circumstances pleaded the petition does state a cause of action against the bank and that the court was in error in directing a verdict on the petition. The judgment will be reversed and the cause remanded for further proceedings.

*Judgment reversed and cause remanded.*

CARPENTER and LLOYD, JJ., concur.