## HALES–MULLALY, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2565.

Circuit Court of Appeals, Tenth Circuit.

Nov. 6, 1942.

510

Chas. H. Garnett, of Oklahoma City, Okl., for petitioner.

L. W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Arthur Manella, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The question is whether Hales-Mullaly, Inc., herein called petitioner, was authorized in computing its net income to deduct as expenses or losses amounts paid in settlement of pending litigation and for attorneys' fees and other expenses incurred in connection with the litigation.

Harbour-Longmire Company, a corporation, was engaged in the mercantile business in Oklahoma City, and dealt at wholesale and retail in furniture, furnishings, equipment and appliances of various kinds. W. T. Hales was a large stockholder in the corporation and was its president prior to 1935. J. R. McBrayer entered its employ in 1917, later became a stockholder, and was its secretary from January, 1923, to September, 1935. George A. Hales and Carter Mullaly were employees until August, 1935. George A. Hales was the son and Carter Mullaly the son-in-law of W. T. Hales. In 1934, W. T. Hales and McBrayer became dissatisfied with the conduct of the business; and in May or June, 1935, Hales sold all of his stock and McBrayer part of his to the company. By letter dated September 5 or 6, 1935, the company agreed to sell to George A. Hales and Mullaly its entire stock of household appliances in the wholesale division, such as refrigerators, radios, and ranges, together with parts and accessories. Three or four days later, on September 9, petitioner was incorporated. W. T. Hales, George A. Hales, W. T. Hales, Jr., Mullaly and McBrayer were its incorporators and constituted its first board of directors. On September 12, three days after petitioner was organized, Harbour-Longmire and George A. Hales and Mullaly entered into a formal contract for the sale of the entire stock of household appliances in the wholesale division, certain franchises, and the good will of the company, as outlined in the letter. The purchase price of $47,566.51 was paid with checks of petitioner, and the merchandise was conveyed to George A. Hales and Mullaly but they later transferred it to petitioner. From the time petitioner was organized, George A. Hales and Mullaly merely acted for it in connection with the transaction.

In December, 1935, five former employees of Harbour-Longmire filed separate suits against that company for the recovery of alleged unpaid commissions. The total amount claimed in the several suits was in excess of $27,500. At the time of the institution of the suits, these individuals were employees of petitioner. In March, 1936, Harbour-Longmire instituted in the state court an action against W. T. Hales, George A. Hales, Mullaly, McBrayer, the five former salesmen, and petitioner. It was alleged that sometime between the middle

of the year 1934 and 1935, W. T. Hales, George A. Hales, Mullaly and McBrayer formed a conspiracy to injure the wholesale business of plaintiff including its good will, and procure for themselves such business and good will, together with the franchises which plaintiff had in connection therewith; that the five former employees later joined the conspiracy; that certain overt acts were committed in furtherance of it; that petitioner was organized for the purpose of taking over such business and good will and franchises when they should be procured by the conspirators, and that it did so; and that plaintiff had suffered damages in the sum of $1,096,739.53. Judgment was sought in that amount. The parties to all six of the cases agreed upon a settlement. The consideration for the settlement was the satisfaction by petitioner of the amounts claimed by the former employees on the basis of sixty per cent of the amount claimed. Petitioner paid the former employees $16,585.33, paid its attorneys in the damage suit $35,000 as compensation for their services, and paid other expenses in the sum of $202.75, aggregating $51,788.08.

In making its income tax return for the fiscal year ended August 31, 1937, petitioner claimed deductions for these expenditures as ordinary and necessary expenses in carrying on its business; the Commissioner of Internal Revenue ruled that such expenditures were not thus deductible; on redetermination, the Board of Tax Appeals sustained the Commissioner; and petitioner brought the proceeding here on review.

Section 22(a) of the Revenue Act of 1936, 49 Stat. 1648, 1657, 26 U.S.C.A. Int.Rev.Acts, page 825, provides that "gross income" shall include "gains, profits, and income derived from * * * businesses, commerce, or sales, or dealings in property, whether real or personal * * *; also * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The broad language of the provision clearly indicates a purpose on the part of Congress to exert the full measure of its taxing power within the categories enunciated. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. And deductions from gross income are not a matter of right. They are a matter of legislative grace, and a taxpayer claiming a deduction must bring himself squarely within the terms of a statute expressly authorizing it. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct.

788, 78 L.Ed. 1348; White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

Petitioner relies on section 23(a) of the Revenue Act, 26 U.S.C.A. Int.Rev. Acts, page 827, supra, for the deductions as expenses. The pertinent part of the section provides that "In computing net income there shall be allowed as deductions: * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *." The statute does not authorize a deduction for every expense paid or incurred. It expressly limits the taking of deductions to expenses which are ordinary and necessary in carrying on the trade or business. An expense may be ordinary but not necessary. Another may be necessary and still not ordinary. A third may be ordinary and necessary in some other kind of trade or business but not in relation to the kind in which the taxpayer is engaged. And a fourth may be ordinary and necessary and still constitute a charge upon capital as distinguished from operation. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. In order to come within the statute, an expense must be both ordinary and necessary in relation to the kind of trade or business in which the taxpayer is engaged. Welch v. Helvering, supra; Deputy v. Du Pont, supra. And to be ordinary, it must be normal, usual, or customary. It may occur only once in the life of the taxpayer, but the transaction which gives rise to it must be of frequent or common occurrence in the kind of business involved. Deputy v. Du Pont, supra. Too, the mere payment of an obligation is not enough to warrant the deduction. The nature of the transaction out of which the obligation arose, whether normal, usual, or customary in a trade or business of that type, is the crucial test. Deputy v. Du Pont, supra.

Ordinarily an expenditure made for attorneys fees or other expenses in the defense of a suit or action against a taxpayer which is directly connected with or proximately resulted from his trade or business is deductible under section 23(a). Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. But the naked fact that a voluntary expenditure was made for attorneys fees or other expenses in the course of legal proceedings or as the result of a compromise is not controlling within itself. The decisive test still is the char-

acter of the transaction which gives rise to the payment. Colony Coal & Coke Corp. v. Commissioner of Int. Rev., 4 Cir., 52 F.2d 923. It is whether the transaction occasioning the expenditure is normal, usual, or customary in the trade or business of the type in which the taxpayer is engaged. Deputy v. Du Pont, supra.

■ The suit which Harbour-Longmire instituted in the state court was for the recovery of damages suffered as the result of the forming of a conspiracy and the doing of certain overt acts in furtherance of it. The object of the alleged conspiracy was to pirate the business of Harbour-Longmire. But, according to the allegations contained in the complaint, certain individuals formed the conspiracy and did the wrongful acts in furtherance of it prior to the organization of petitioner. The suit was bottomed on fraud committed by the individuals antecedent to the existence of petitioner. The liability of petitioner, if any, arose solely and exclusively from its receiving and retaining the benefits of the fraud of the individuals who caused it to be organized. It may be conceded for present purposes that if the conspiracy was formed and the overt acts committed, and petitioner received and retained the stock of merchandise and franchises, all as alleged in the action, petitioner became liable along with the individual conspirators for the damages which Harbour-Longmire suffered. Johnston Fife Hat Co. v. National Bank of Guthrie, 4 Okl. 17, 44 P. 192; Hamilton Inv. Co. v. Bollman, 7 Cir., 268 F. 788. But whether the complaint in the suit stated a cause of action against petitioner is not the test in this proceeding. The test which must be applied here is whether a liability of that kind was ordinary and was connected with the business of petitioner, within the purview of section 23(a). As already indicated, the test of ordinariness is whether the liability which gives rise to the expenditures made in the settlement and for

attorneys fees and other expenses is one reasonably to be expected in the conduct of a furniture and furnishings business. It seems clear that measured by the experience of those engaged in that field of industry such a liability is not one reasonably to be anticipated. It is not ordinary. Moreover, since the fraud was committed by the individuals prior to the organization of the taxpayer, and prior to the time it first engaged in business, the liability or obligation asserted in the suit was not incurred in carrying on the business, within the meaning of the statute. And if the liability was not ordinary and was not incurred in carrying on such business, the expenditures which the taxpayer made in the settlement and for the attorneys fees and other expenses were not deductible as business expenses. Welch v. Helvering, supra; Deputy v. Du Pont, supra.

■ Section 23(f) of the Revenue Act, supra, provides that in computing net income losses sustained by a corporation during the taxable year and not compensated for by insurance or otherwise may be deducted. It is contended that the expenditures in question were deductible as losses under that provision of the act. It suffices to say without elaboration that expenditures made in the compromise of litigation and for attorneys fees and other expenses in connection with the litigation do not come within the ambit of that section. Kornhauser v. United States, supra.

Petitioner places reliance upon Protest of Hales-Mullaly, Inc., 186 Okl. 693, 100 P.2d 274. It was there held that the expenditures here in question were deductible under a state statute substantially identical with section 23(a) (f), supra. The case supports the contentions of petitioner, and we make no effort to distinguish it. But for the reasons already stated, we are unable to share the views expressed in the opinion of the majority of the court.

The order of the Board is affirmed.