GRANT *v.* LOOKOUT MOUNTAIN CO.

(*Knoxville.*    October 25, 1894.)

1. CORPORATIONS.    *Liability for stockholders' attorney fees.*

A corporation is liable for complainants' reasonable attorney fees, incurred in the successful prosecution of a just and necessary suit by a minority of its stockholders against itself, its officers and directors, for the benefit of the company, to enjoin the fraudulent disposition of its properties, or to recover properties already fraudulently transferred.    (*Post, pp. 694–701.*)

Cases cited: Wallace *v.* Bank, 89 Tenn., 635; Deaderick *v.* Wilson, 8 Bax., 131; 45 Fed. Rep., 668; 17 Fed. Rep., 48; 105 U. S., 527; 113 U. S., 116; 151 U. S., 343.

2. SAME.    *Same.    Lien.*

And the attorney fees, in such case, constitute a lien upon the property recovered by the suit.

Cases cited and approved: Perkins *v.* Perkins, 9 Heis., 95; Keith *v.* Fitzhugh, 15 Lea, 50; Garner *v.* Garner, 1 Lea, 29.

FROM HAMILTON.

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

COOKE, FRAZIER & SWANEY for Grant.

WATKINS & BOGLE for Lookout Mountain Company.

McALISTER, J.   The single question presented
for determination in this cause is whether com-
plainants below are entitled to have counsel fees
allowed and declared a lien on the property re-
covered.   The proceedings in which the profes-
sional services were rendered were commenced by
M. Grant and others, minority stockholders in the
Lookout Mountain Company, against said corpora-
tion and certain officers and directors therein, to
enjoin a sale of all the real and personal prop-
erty of the corporation to a Boston syndicate, to
be paid for in bonds covering the property of de-
fendant corporation and two other corporations,
known as the "Lookout Mountain Hotel Company"
and the "Chattanooga and Lookout Mountain Rail-
road Company."   The bill charged, first, that the
proposed sale of the entire property of the corpora-
tion was *ultra vires*, and, second, that the proposed
transaction was fraudulent in this, that the ma-
jority stockholders in the Lookout Mountain Land
Company were also the owners of a majority of
the stock in the hotel and railroad companies;
that the last two corporations were insolvent, and
that these majority stockholders were using their
power to sacrifice the land company for the ben-
efit of their interests in the two insolvent corpo-
rations.   Answers were filed by all the defendants,
and, upon motion, the injunction was dissolved.

It appears that the original contract was not at-
tempted to be carried out, but a second contract
was made, by which a deed was executed to all

the real estate to Baxter, and the personalty sold him, in consideration of his promissory note for $200,000, due in ten years. No security was given upon the note, and the bill charged that Baxter was insolvent. An amended and supplemental bill was then filed by said minority stockholders to cancel the deed to Baxter and recover the property, and to prevent the consolidation of said Lookout Mountain Land Company with the other two corporations.

Answers were filed by the defendants, proof was taken, and a decree pronounced by Chancellor McConnell in favor of complainants, in accordance with the prayer of their bill. The deed was canceled, and the possession of all the realty and personalty described in the bills was decreed to be restored to the Lookout Mountain Company, and, if necessary, a writ of possession was ordered to issue. It should be remarked that the deed executed to Baxter conveyed real estate on Lookout Mountain, valued at $500,000, and also real estate notes belonging to the company, amounting to about $50,000, and that all of this property was recovered by the principal decree, and restored to the corporation. The minority stockholders, who had thus conducted the litigation to a successful termination, thereupon moved the Court for a reference to cover their necessary expenses and solicitor's fees incurred in the prosecution of the suit, and prayed that it be declared a lien upon the property recovered. The solicitors themselves also

made a similar motion. The Chancellor was of opinion that the litigation was a controversy between warring stockholders, and that complainants were not entitled to an allowance for counsel fees against the company, and the motions were accordingly refused. The defendants below abandoned their appeal on the main question, and there is now no controversy in respect to the correctness of the decree rendered in favor of complainants.

Complainants appealed from the decree of the Chancellor refusing a reference on the motion for an allowance of reasonable counsel fees. The first error assigned is, that the Chancellor erred in refusing said motion, for the reason that, no question having been made as to the necessity of the suit to recover and preserve the valuable real and personal property belonging to the Lookout Mountain Company, and the necessity for employing counsel to prosecute the cause, and the recovery inuring to the company, it was a proper case for the allowance of counsel fees.

The second assignment is, that the Chancellor should have decreed that the counsel fees be paid out of the recovery, inasmuch as the suit was brought for the purpose of protecting the property in the first instance, and was prosecuted in good faith to a successful termination; that the recovery inured to the benefit of the corporation—the Lookout Mountain Company—and all of its property was restored to it, and no especial benefits reaped by the complainants.

The only answer to the claim of complainants for an allowance of their reasonable counsel fees, as we see it in this record, is that the judicial machinery by which these transactions were canceled and the property restored to the corporation was set in motion by minority stockholders. It may be conceded at the outset that if this is the case of an intestine war between discordant stockholders, to promote their individual emolument, and not for the immediate benefit of the corporation, it would not be a proper case for the allowance of counsel fees.

Ordinarily, the directors and other officers of a corporation institute all suits in the name of the corporation, when it is necessary to protect its property rights, and it is only when the officers have breached their trust, and refused to take action, that suits can be instituted by minority stockholders.

It is insisted that this suit was, in reality, the suit of the Lookout Mountain Company, and, the regular trustee having breached his official duty, that the minority stockholders had a right to put the machinery of the law in motion, on behalf of the corporation, and employ counsel to represent it. The insistence is that the recovery in such a case as this belongs to the corporation, and the suit is, in all respects, the same as if the corporation had prosecuted it, except that the stockholders may commence such a case. 3 Pomeroy's Eq. Jur., Sec. 1095.

The reasons adduced by Prof. Pomeroy for the rule allowing minority stockholders to institute such a suit appear to us conclusive on this question. We quote his language, as follows:

"Although the corporation holds all the title, legal or equitable, to the corporate property, and is the immediate *cestui que trust*, under the directors, with respect to such property, and is, theoretically, the only proper party to sue for wrongful dealings with that property, yet Courts of Equity recognize the truth that the stockholders are ultimately the only beneficiaries; that their rights are really, though indirectly, protected by remedies given to the corporation; and that the final object of suits by the corporation is to maintain the interests of the stockholders. While, in general, actions to obtain relief against wrongful dealings with the corporate property by directors and officers must be brought by and in the name of the corporation, yet if in any such case the corporation should refuse to bring suit, the Courts have seen that the stockholders would be without any immediate and certain remedy, unless a modification of the general rule were admitted. To that end, the following modification of the general rule stated in the last preceding paragraph has been established as firmly and surely as the rule itself. Wherever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongful dealing with corporate property, or wrongful exercise of

corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrong-doing directors, officers, and other persons; but it is absolutely indispensable that the corporation itself should be joined as a party—usually a co-defendant. The *rationale* of this rule should not be misapprehended. The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his*, or because *he* is entitled to the relief sought. He is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the Court.* The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation. It is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder plaintiff. The corporation is, therefore, an indispensably *necessary* party, not simply on the general principles of equity pleading in order that it may be bound by the decree, but in order that the relief, when granted, may be awarded

to it as a party to the record by the decree. This view completely answers the objections which are sometimes raised in suits of this class, that the plaintiff has no interest in the subject-matter of the controversy nor in the relief. In fact, the plaintiff has no *direct* interest. The defendant corporation alone has any direct interest. The plaintiff is permitted, notwithstanding his want of interest, to maintain the action solely to prevent an otherwise complete failure of justice." 3 Pomeroy's Equity Jurisprudence, Sec. 1095.

In the case at bar, if the corporation had instituted the suit, it would undoubtedly have been liable for the fees. We think it was such a suit as the corporation ought to have commenced, but the directors and officers having assumed an antagonistic position to the rights of the stockholders, and illegally conveyed away all the corporate property, threatening the entire destruction and dissolution of the corporation, the minority stockholders had a right to intervene, and, by bill in equity, protect the corporate interests. The company was an indispensable party to the suit, and for this reason the decree was not recovered for Grant and the other minority stockholders, but for the corporation. 2 Cook on Stock and Stockholders (3d Ed.), Sec. 748; *Howe* v. *Barney*, 45 Fed. Rep., 668; *Wallace* v. *Bank*, 5 Pickle, 635; *Deaderick* v. *Wilson*, 8 Bax., 131.

In the case of *Mecker* v. *Winthrop Iron Company*, 17 Fed. Rep., 48 *et seq.*, Baxter, Circuit Judge,

allowed counsel fees and other necessary expenditures in the prosecution of a suit by minority stockholders, where they succeeded in having a lease of real estate forfeited, and recovered the property for the corporation. In that case the iron company owned an iron ore mine. In 1877 the company leased its mine to a partnership composed of four brothers, known as the St. Clair brothers. These brothers, after effecting the lease, organized the Winthrop Hematite Company to work the mine. In 1881, before the expiration of the lease, an effort was made, but without success, to renew the lease for the hematite company. Thereupon, the St. Clair brothers bought a majority of the stock of the iron company. They organized and manipulated the iron company so as to have a resolution passed, by its directors, directing an eighteen year lease to be made to the hematite company, at lower rates and royalties than the old lease, then about to expire. This lease was accordingly executed. Mecker and other stockholders in the iron company filed their bill to rescind the renewal lease to the hematite company, and for an account of rents and profits. The Court rescinded the lease, and appointed a receiver to take charge of the mines for the iron company. It was held that, as the suit was prosecuted for the benefit of all the parties interested, to protect and preserve a trust - fund, they were entitled to be re-imbursed from the fund for all proper expenditure liabilities incurred. A reference

was ordered to ascertain what would be a proper allowance for counsel fees and other necessary expenditures.

Upon the authority of this case, Spelling, in his treatise on Corporations, lays down the following rule, viz.: "The owner of stock in a corporation who sues for himself and all other shareholders successfully, for a wrong done to the corporation, is entitled to be re-imbursed his actual and necessary expenses, including attorneys fees, out of the corporate fund." 2 Spelling on Corporations, Sec. 643; Cook on Stock and Stockholders (3d Ed.), Sec. 748, p. 118.

An English case very much in point is that of *Kernaghon* v. *Williams*, Law Reports, 6 Eq., 228, opinion by Lord Runilly, M. R. See also *Trustees* v. *Greenough*, 105 U. S., 527; *Central Railroad and Banking Co.* v. *Pettus*, 113 U. S., 116; *Meddaugh* v. *Wilson*, 151 U. S., 343.

We are, therefore, of opinion that this record shows that, through the intervention of these minority stockholders, the property of the corporation has been preserved, protected, and, indeed, recovered, after it had been illegally conveyed away, and that such recovery inuring to the benefit of the corporation, the suit was, to all intents and purposes, the suit of the corporation itself. The Lookout Mountain Company is, therefore, responsible for proper and reasonable counsel fees incurred by complainants in the prosecution of the suit. The remaining question is whether these fees are

liens upon the land conveyed by the deeds which complainants procured to be canceled. The record shows that this land had been conveyed away, and that, by the decree, it was restored to the company, and, if necessary, a writ of possession was ordered to issue. This was not the case merely of canceling a deed or removing a cloud, but of absolute recovery. The case comes within the rule laid down by this Court, that counsel are entitled to a lien upon the fund recovered by their clients for reasonable fees, and this lien attaches to real estate when the subject of litigation. *Perkins* v. *Perkins*, 9 Heis., 95; 15 Lea, 50; 1 Lea, 29.

We are, therefore, of opinion that these fees must be paid by the Lookout Mountain Company, and that they are liens on the land recovered.

The decree of the Chancellor is reversed, and the case remanded for a reference, in accordance with the motions submitted by complainants and their counsel in the Court below.