## KNIGHT–CAMPBELL MUSIC CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3250.

Circuit Court of Appeals, Tenth Circuit.

May 23, 1946.

Rehearing Denied June 19, 1946.

PHILLIPS, Circuit Judge, dissenting.

———◇———

Morrison Shafroth, of Denver, Colo. (Grant, Shafroth & Toll, of Denver, Colo., on the brief), for petitioner.

I. Henry Kutz, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch and Paul F. Mickey, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The question presented for determination is whether The Knight-Campbell Music Company, a corporation engaged in business in Denver, Colorado, hereinafter referred to as the taxpayer, was entitled to a deduction from gross income, claimed as an ordinary and necessary business expense.

The taxpayer had outstanding both common and preferred stock. There were 2644 shares of common stock, of which Lillian E. Campbell owned 1315 3/6 shares, Clarence G. Campbell 464 5/6 shares, Bertha Campbell 335 5/6 shares, Marjorie Campbell Bryant 333 2/6 shares, Cheney R. Baker 154 shares, W. W. Bradford 37 3/6 shares, and Wilbur Denious 3 shares. Lillian E. Campbell, Clarence G. Campbell, Bertha Campbell, Cheney R. Baker, and W. W. Bradford were the directors and officers of the company. The owners of a majority of the preferred stock filed in the district court of the state an action against the taxpayer, Lillian E. Campbell, Clarence G. Campbell, Bertha Campbell, Cheney R. Baker, and W. W. Bradford, charging that the individual defendants, acting as the board of directors of the taxpayer, had committed various ultra vires and fraudulent acts in willful violation of the rights of the taxpayer and of the owners of preferred stock. Personal judgment was rendered in the action in favor of the taxpayer, for the benefit of the owners of preferred stock, and against the individual defendants for different amounts, in some instances approximating $100,000; and receivers were appointed to operate the business. An appeal was taken from the judgment, and while the appeal was pending the receivers filed in the receivership proceeding in the district court an application for authority to proceed with the liquidation of the business. Lillian E. Campbell and Clarence G. Campbell retained attorneys to resist the application of the receivers, and, if possible, to bring about the termination of the receivership. The attorneys retained for these purposes had not been connected with the litigation, either in the district court or the supreme court. The attorneys filed in the proceeding a petition resisting the application for an order of liquidation, seeking the discharge of the receivers, and further seeking the return of the corporation to the management of directors chosen by the owners of common stock. During the course of the hearing on the application of the receivers, and on the pleading filed by the owners of common stock, a settlement was reached which provided for the retirement in full of the preferred stock and for the continuance of the business as a going concern. A stipulation of settlement was filed in the cause. The court approved the stipulation, and a ·few days later the receivers were discharged and the business returned to the common stockholders. On the day the court approved the stipulation of settlement, the taxpayer transferred and assigned to Clarence G. Campbell all judgments in its favor which had been obtained against Lillian E. Campbell, Clarence G. Campbell, Bertha Campbell, Cheney R. Baker, and W. W. Bradford; the judgments were thereupon cancelled; and upon the discharge of the receivers, the individual defendants dropped their appeal in the supreme court. In 1935, Lillian E. Campbell and Clarence G. Campbell paid the attorneys employed by them $10,000 as a fee for the professional services which they rendered.

In order to obtain sufficient cash with which to retire the preferred stock pursuant to the stipulation filed in the receivership proceeding, it was necessary for the taxpayer to borrow $35,000, and that amount was obtained from a local bank. But the bank required that two-thirds of the common stock be turned over to it, with voting power; and it further required that the taxpayer not assume liability for payment of the fee of the attorneys employed by Lillian E. Campbell and Clarence G. Campbell or enter it on the books as an account payable. The holders of approximately ninety per cent of the common stock agreed that as soon as the loan made by the bank was paid, or earlier if the bank would consent, the taxpayer would reimburse Lillian E. Campbell and Clarence G. Campbell in the amount of the fee paid the attorneys. In 1942, the bank consented,

the board of directors of the taxpayer adopted a resolution authorizing reimbursement, and the taxpayer paid Clarence G. Campbell $2500 in cash, paid Lillian E. Campbell $1575 in cash, and executed a note to her for $5925.

The taxpayer kept its books of account on an accrual basis, and in its return for the year 1942 a deduction in the sum of $10,000 was claimed as an ordinary and necessary expense. The Commissioner of Internal Revenue disallowed the deduction and imposed a resulting deficiency in income tax. The Tax Court sustained the action of the Commissioner, and the proceeding is here on review.

■ A deduction from gross income is not to be allowed unless it is plainly authorized by an applicable statutory provision or a regulation having the force of a statute. Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Deputy v. Dupont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607; Hales-Mullaly, Inc., v. Commissioner, 10 Cir., 131 F.2d 509. And the burden rests upon the taxpayer of clearly showing the right to the claimed deduction. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed 725; Interstate Transit Lines v. Commissioner, supra.

■ The taxpayer relies upon section 23(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23(a) (1) as authorizing the deduction. That section provides that in computing income tax there shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including reasonable allowances for salaries or other compensation for personal services actually rendered. But a taxpayer is not entitled to claim a deduction under the statute unless the expenditure was directly related to the trade or business of the taxpayer and was for an ordinary and necessary expense in carrying on such trade or business. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Hales-Mullaly, Inc., v. Commissioner, supra.

■ A taxpayer is authorized to claim as a deduction under the statute sums paid to attorneys for their professional services in connection with a suit, action, or proceeding directly connected with or affecting its trade or business. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed 505; Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Hales-Mullaly, Inc., v. Commissioner, supra. And it may be conceded, without deciding, that a corporate taxpayer is entitled to claim as a deduction sums paid to owners of its common stock as reimbursement for amounts which they paid to attorneys for services rendered in representing the interests of the taxpayer while in receivership in legal proceedings directly connected with or affecting the trade or business of the taxpayer. But whether an accrued liability or an expenditure made is one falling within that class is ordinarily a question of fact. Commissioner v. Heininger, supra.

■■ Here, the Tax Court found that the cash which the taxpayer paid to Lillian E. Campbell and Clarence G. Campbell, and the note which it executed to her, were not for an ordinary and necessary expense directly connected with or affecting the trade or business of the taxpayer. The court found that the services of the attorneys were rendered primarily for the benefit of the owners of common stock; that one of the primary purposes of the employment was to effect the cancellation of the personal judgments against the owners of common stock, two of whom employed the attorneys and paid them the fee; and that the prevention of the liquidation, the retirement of the preferred stock, and the termination of the receivership were the means employed to bring about these desired objectives. These findings are challenged. It is argued that the intervention in the receivership proceeding was solely for the purpose of preventing the liquidation of the business and of protecting the interests of the taxpayer. It is further argued that the fact that the taxpayer itself later cancelled the judg-

ments which it had obtained against certain of the individual directors and stockholders was unrelated to the intervention in the receivership proceeding, and that the settlement of the receivership proceeding did not in any way affect the judgments. But the Tax Court was unable to share that view. Looking at the facts and circumstances in their composite effect, the Tax Court found in substance that the generating purpose which prompted the two stockholders to employ and pay the attorneys in the first instance was to bring about the cancellation of the personal judgments and that the several steps taken were the means adopted to achieve that end. Congress, in line with a well defined general policy, committed to the Tax Court, not this court on review, the function of appraising conflicting and circumstantial evidence, and of drawing inferences from the facts. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. The findings of the Tax Court are adequately supported by the evidence and the inferences fairly to be drawn from it and therefore are not to be overturned.

█ A liability voluntarily assumed or paid by a corporate taxpayer as reimbursement of two of its stockholders for sums which they paid to attorneys as a fee for services rendered primarily in behalf of certain stockholders in securing cancellation of personal judgments which the taxpayer held against such stockholders is not an ordinary and necessary expense in carrying on the trade or business of the taxpayer, within the meaning of section 23, supra. Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257; Sam P. Wallingford Grain Corp. v. Commissioner, 10 Cir., 74 F.2d 453; National Piano Manufacturing Co. v. Burnet, 60 App.D.C. 160, 50 F.2d 310; Robinson v. Commissioner, 8 Cir., 53 F.2d 810, 79 A.L.R. 975.

The decision of the Tax Court is affirmed.

PHILLIPS, Circuit Judge (dissenting).

The question presented is whether the Knight-Campbell Music Company[1] was entitled to deduct $10,000 as an ordinary and necessary expense paid during the taxable year in carrying on its trade and business.

Receivers, appointed by the state court, took over the operation of the business of the taxpayer. Thereafter in a report filed September 7, 1934, the receivers stated that the business could not be disposed of as a going concern; that further operation would result in operating losses and prevent the receivers from making payments of claims of preferred stockholders in accordance with the decree of the state court; and that it was necessary to proceed with the liquidation of the taxpayer's business. On September 8, 1934, the receivers served notice that on September 11, 1934, they would apply for an order directing them to proceed with the liquidation of the taxpayer. The firm of Grant, Ellis, Shafroth and Toll,[2] and Victor A. Miller were employed by C. G. Campbell and Lillian E. Campbell to resist the application for an order of liquidation and to seek the discharge of the receivers and a return of the management to petitioner's board of directors. To those ends, a petition was filed by C. G. Campbell, Lillian E. Campbell, C. R. Baker, W. W. Bradford, and a petition of intervention was filed by Marjorie C. Bryant. A hearing was had on the application of the receivers and the petitions referred to above. During the course of the hearing, a settlement was agreed upon. Thereafter, on May 8, 1935, a stipulation was filed and approved by the District Court, which provided that the preferred stockholders should be paid in full and retired; that certain secured notes should be paid; that the costs of the receivership should be paid by the receivers and that the receivers should be discharged; and that the taxpayer should be restored to private management. The stipulation was carried out. $97,960 was paid in liquidation of the preferred stock and $48,092.03 was paid in liquidation of the notes.

On May 8, 1935, the taxpayer transferred the judgments against the individual defendants to C. G. Campbell and such judgments were released by Campbell.

On June 13, 1935, Lillian E. Campbell

---

[1] Hereinafter called the taxpayer.

[2] Hereinafter called the Grant firm.

and Clarence G. Campbell paid the Grant firm and Miller $10,000 for services rendered. The fee was reasonable.

A forced liquidation sought by the receivers would have resulted in the termination of the business as a going concern. The taxpayer is now operating profitably and has net assets in excess of $200,000.

After the settlement, the appeal in the Supreme Court was dismissed. The Grant firm and Miller were not employed in, and did not participate in, the appellate proceedings, but appeared solely in the receivership proceedings.

The taxpayer borrowed $35,000 from the First National Bank of Denver to carry out the settlement agreement. The common stockholders, owning approximately 90 per cent of the common stock, agreed that as soon as the bank loan was paid off, or earlier, should the bank consent, the taxpayer would reimburse Lillian E. Campbell and Clarence G. Campbell for the $10,000 attorneys' fees paid by them. On December 22, 1942, the board of directors of the taxpayer adopted a resolution authorizing the taxpayer to obligate itself to reimburse Lillian E. Campbell and Clarence G. Campbell. In 1942, the petitioner paid Clarence G. Campbell $2,500 in cash and Lillian E. Campbell $1,575 in cash and gave her a note for $5,925. Prior thereto, the bank had not consented and had not been willing to consent to such payment. The taxpayer keeps its books on an accrual basis. In its income tax return for 1942, the taxpayer deducted the $10,000 as a necessary and ordinary expense. The Commissioner disallowed the deduction and gave notice of the deficiency.

The taxpayer sought a review before the Tax Court. The facts were stipulated. The Tax Court found that the Grant firm and Miller were employed primarily to serve the common stockholders.

There can be no doubt that the motive which actuated Lillian E. Campbell and C. G. Campbell to employ the Grant firm and Miller was their self-interest, as common stockholders of the taxpayer. Nevertheless, it seems to me to indubitably appear that the services were actually rendered in behalf of the taxpayer. The Grant firm and Miller opposed the receivers' petition for liquidation and sought the discharge of the receivers and the return of the business of the taxpayer to private management. The settlement effected those purposes and saved the taxpayer from destruction. The liquidation of the outstanding preferred stock, with cash in the hands of the receivers and cash borrowed from the First National Bank, was a corporate act. The borrowing of the money was a corporate act. The services, rendered in connection with the liquidation of the preferred stock, were rendered in behalf of the taxpayer. Of course, the common stockholders were benefited. Any benefit accruing to a corporation benefits its stockholders, but there is no reason here to disregard the corporate entity, or to regard the services as rendered to the stockholders rather than to the taxpayer.

If the services were rendered for and in behalf of the taxpayer, it is proper for it to obligate itself to make reimbursement.[3]

If the services were rendered for and in behalf of the taxpayer to prevent its liquidation, to restore it to private management, and to liquidate the preferred stock, it was an ordinary and necessary expense and was properly deductible.[4]

While what is an ordinary and necessary expense is usually a question of fact, here the Tax Court adopted a test of the motive that induced the employment, rather than the test of to whom and for whom the legal services were rendered, and a question of law is unmistakably involved which this court may review.[5]

I would reverse.

---

[3] Grant v. Lookout Mountain Company, 93 Tenn. 691, 28 S.W. 90, 27 L.R.A. 98; Watson v. Johnson, 174 Wash. 12, 24 P. 2d 592, 89 A.L.R. 1527; Noxon Chemical Products Co., Inc., v. Commissioner, 27 B.T.A. 1028.

[4] Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

[5] Commissioner v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171.