The BOULDER BUILDING CORPORA-
TION, a corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

The BOULDER BUILDING CORPORA-
TION, a corporation, Plaintiff,

v.

Earl R. WISEMAN, as Director of In-
ternal Revenue of the State of
Oklahoma, Defendant.

Civ. Nos. 5772, 6079.

United States District Court,
W. D. Oklahoma.

Sept. 30, 1954.

Ownby & Warren, Tulsa, Okl., for plaintiffs.

Leonard Ralston, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

WALLACE, District Judge.

The plaintiff, Boulder Building Corporation, instituted these two actions to recover certain sums paid as income tax for the years 1951 and 1952 as a result of the Commissioner's alleged unlawful disallowance of certain ordinary business expense deductions in the form of professional fees paid by the plaintiff. during the taxable years.[1] For purposes of convenience these two cases were consolidated for trial.

The evidence indicates that the plaintiff company, an Oklahoma Corporation, was incorporated in 1928 under the name of the Abbott Company for a term of twenty years for the purpose of carrying on a merchandising business. Pursuant to such corporate objective the company built a seven story building in Tulsa, Oklahoma, and occupied this building until about 1931, at which time the building was leased to Sears & Roebuck Company.

In the latter part of 1948, in accordance with certain provisions of the Oklahoma Business Corporation Act of 1947,[2] a majority of the stockholders of Abbott Company authorized the board of directors to extend the then expiring corporate life of the company, to enlarge and amend the powers of the corporation, and to change the corporation's name to the Boulder Building Corporation. When such action was voted, a minority of the stockholders (who held approximately one-third of the outstanding corporate stock) served notice upon the corporation and demanded that the corporation purchase such minority stock at fair value as provided by statute.[3] When the two factions were unable to agree between themselves on the value of the stock, the minority stockholders filed an action in the state district court to gain a judicial declaration of the stock's value.[4]

---

1. In Case No. 5772 plaintiff asks for $1,-295.29 with interest in the amount of $87.17 paid at the time the deficiency was paid under protest. In Case No. 6079 plaintiff seeks $12,797.95, with interest in the sum of $660.93 paid at the time the claim for refund was filed.

2. 18 O.S.Supp.1949 § 1.1 et seq. See in particular § 1.151 et seq.

3. See 18 O.S.Supp.1949 § 1.159.

4. *"Action to fix value of dissenting shares.* —a. Any dissenting shareholder of a domestic corporation or any such corpora-

In connection with this state court litigation the plaintiff company paid $3,075 to professional appraisers who testified in its behalf and an additional $25,000 for legal counsel. The Commissioner's failure to permit the appraisal fee to be deducted as an ordinary and necessary business expense forms the basis for the cause of action in Case No. 5772, whereas the disallowance of the attorneys' fees as a business deduction is the basis for plaintiff's suit to recover in Case No. 6079.

The line dividing ordinary business expenses and those expenditures attributable to capital is ofttimes difficult to discern.[5] In most instances considerable persuasion can be ushered into play to support each side of a controversy involving such a determination. However, after careful study the Court has concluded that under the existing law all the professional fees in question must be deemed nondeductible items.

■ It is fundamental that all expense deductions are matters of legislative grace and that any taxpayer asserting the right to take deductions for income tax purposes must show that the requested deductions clearly and specifically fall within the framework of allowed deductions.[6] The provision relied upon by plaintiff provides:

"(1) *Trade or business expenses*

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *". 26 U.S.C.A. § 23(a)(1) (A).

However, the Commissioner in denying the deductions applied Section 29.24-2 of Treasury Regulations 111, which regulations are promulgated under the Internal Revenue Code; this section states:[7]

"Sec. 29.24-2. Capital Expenditures.—* * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. * * *"

■ The regularity or irregularity of the appearance of classes of expenditures during the life of a business forms no component part of the formula used to determine just what constitutes "ordinary and necessary expenses" paid in carrying on a business; an expense may be of the kind and character which occurs only several times during the entire history of a business, or possibly only

---

tion in whose behalf a cause of action to have the fair value of dissenting shares determined has accrued may, within thirty (30) days after the accrual thereof but not thereafter, file a petition in the district court of the county in which the registered office of such corporation is located to have the fair value of such dissenting shares determined. If such petition be not filed within such period, then such shareholder shall be deemed to have waived his right to dissent. * * *" 18 O.S.Supp.1949 § 1.160.

5. As observed in Rassenfoss v. Commissioner of Internal Revenue, 7 Cir., 1946, 158 F.2d 764, 766: " * * * the line of demarcation between an 'ordinary and necessary expense' as a deductible item and an expenditure incurred in defense of title to property and therefore not deductible is extremely narrow. In fact, in some of the cases it appears to have been drawn on an arbitrary rather than on a basis of reason or logic."

6. Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 500, 63 S.Ct. 1279, 87 L.Ed. 1607; Bercaw v. Commissioner of Internal Revenue, 4 Cir., 1948; 165 F.2d 521; Knight-Campbell Music Co. v. Commissioner of Internal Revenue, 10 Cir., 1946, 155 F.2d 837.

7. Section 39.24(a)-2, Treasury Regulations 118, promulgated under the Internal Revenue Code and applicable to taxable years beginning after December 31, 1951, is substantially the same as the just quoted section 29.24-2 of Treasury Regulations 111. Significantly, all such regulations have the force of law inasmuch as Congress by the enactment of successive Revenue Acts as approved and adopted this uniform departmental construction. Helvering v. R. J. Reynolds Tobacco Co., 1938, 306 U.S. 110, 115, 59 S.Ct. 423, 83 L.Ed. 536; Helvering v. Winmill, 1938, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52.

once and yet be categorized as an "ordinary and necessary expense" where it arises in direct relation to legitimate business objects of the concern.[8] However, the decisions have uniformly held that where professional fees are paid in connection with the acquisition of stock, or where the title to stock is defended or perfected, such expense whether for attorney's fees, or otherwise, cannot be deemed an ordinary business expense but must be classified as a capital expenditure, an expenditure to be taken into consideration in determining capital gain or loss at the subsequent sale of the involved stock.[9] A payment of professional fees, as just described, must be sharply distinguished from fees paid in carrying out the express purposes for which the business is operating and expenses arising directly incident thereto, such as the employment of counsel in defense of an action in tort levelled at the corporation for alleged negligent acts of an employee working within the scope of his employment.[10]

■ The plaintiff company forcibly argues that although a sizeable amount of capital stock ultimately was purchased as a result of the litigation wherein the instant fees were paid, that such expenses constituted ordinary business expenses for the reason that the company resisted the purchase of the stock and only eventually purchased the stock by virtue of a statutory requirement; and, that such a transaction cannot be termed parallel to an orthodox capital stock purchase, or the defense or perfecting of title to capital stock. In support of its theory plaintiff relies heavily upon the case of William C. Atwater & Company v. Commissioner, wherein the Tax Court observed:[11]

"* * * These facts in substance show that in the litigation with Steinbugler petitioner was not endeavoring to acquire any capital asset. It was not defending title to any stock which it already owned. On the contrary, it was strenuously resisting the suit of Steinbugler, a

---

8. "* * * * In order to come within the statute, an expense must be both ordinary and necessary in relation to the kind of trade or business in which the taxpayer is engaged. (Citing authority.) And to be ordinary, it must be normal, usual, or customary. It may occur only once in the life of the taxpayer, but the transaction which gives rise to it must be of frequent or common occurrence in the kind of business involved. * * *" Hales-Mullaly, Inc., v. Commissioner of Internal Revenue, 10 Cir., 1942, 131 F.2d 509, 511.

9. As observed by Judge Holmes in Jones' Estate v. Commissioner of Internal Revenue, 5 Cir., 1942, 127 F.2d 231, 232: "* * * The gist of the decisions in the vast majority of the cases involving the question has been that all sums expended toward the acquisition, protection, or preservation of title to property from or by means of which income is intended to be produced are capital expenditures. * * *" See also Schwabacher v. Commissioner of Internal Revenue, 9 Cir., 1942, 132 F.2d 516, 519; Murphy Oil Co. v. Burnet, 9 Cir., 1932, 55 F.2d 17, 26; Bowers v. Lumpkin, 4 Cir., 1944, 140 F.2d 927, 151 A.L.R. 1336; Vernor v. United States, 1938, 23 F.Supp. 532, 87 Ct.Cl. 435.

10. Other examples of fees paid as ordinary and necessary business expense are: (1) Attorney's fees paid by taxpayer and stockholder who maintained office and was interested in several business enterprises, in defending minority stockholders' bill in equity charging violation of Anti-Trust Act and wasting of assets of corporation. Foss v. Commissioner of Internal Revenue, 1 Cir., 1935, 75 F.2d 326. (2) Payments made in settlement of demand to protect business from anticipated injury from publicity resulting from litigation. Levitt & Sons, Inc., v. Nunan, 2 Cir., 1944, 142 F.2d 795. (3) Attorney's fees paid by taxpayer in successful defense of a stockholder's derivative suit charging a breach of fiduciary duty owed corporation which taxpayer served as a director and officer. Hochschild v. Commissioner of Internal Revenue, 2 Cir., 1947, 161 F.2d 817. (4) Legal fees and expenses paid by two partners in defense of suit filed by partnership superintendent asking for appointment of receiver, accounting and dissolution of partnership. Rassenfoss v. Commissioner of Internal Revenue, footnote 5 supra.

11. 10 T.C. 218.

former employee, in the regular course of its business. The very essence of this litigation was Steinbugler's effort to enforce an employment contract to repurchase the stock at a price which Steinbugler thought he was entitled to receive. Petitioner contested both its obligation to repurchase and the amounts asked for by Steinbugler. Title to the stock was involved only incidentally. The fact that petitioner was the loser in this litigation and was forced to acquire this stock against its will and pay the judgment which Steinbugler obtained against it, does not, in our opinion impair its right to deduct the litigation expenses of that suit. We hold that the amounts expended by petitioner in 1942 for legal fees and litigation expenses all in connection with the Steinbugler litigation, are deductible in 1942 under section 23 (a)(1)(A), supra."

Although there is some analogy between the Atwater case, supra and the instant case, the analogy breaks down at several pivotal points. In the Atwater case the company was litigating with an employee over the effect of an employment contract entered into in carrying on the ordinary aims and objects of the corporation; and, at all times the corporation resisted plaintiff's demand that the stock be repurchased, sharply contesting the plaintiff's right to enforce the controverted employment contract. The focal point of the Atwater case was the legal effect of an employment contract, and as mentioned by the Tax Court, *title to the stock was involved only incidentally*. In the case at bar the fundamental contest before the state district court was over the determination of the fair value of stock held by minority stockholders. Although plaintiff emphasizes that it too resisted the sale of the stock by way of demurrer in the state district court, the evidence is conclusive that the paramount issue between the parties all the way along centered upon gaining a judicial declaration of the true fair value of the stock. It cannot reasonably be urged in the case at bar that title to the stock was involved only incidentally.

The evidence demonstrates that at the time the majority stockholders voted to change various provisions of the corporate charter and alter the scope of the corporation's business authority that said majority well knew of the minority dissent and recognized that under the Oklahoma Business Corporation Act the minority had the right to demand that their stock be purchased and thus vary appreciably the corporate structure of the company. The minority immediately gave notice of their desire to sell and quoted what they deemed to be the value of the stock. Although the plaintiff disagreed with the minority on the value of the stock, plaintiff immediately countered with an offer to purchase based upon figures which in plaintiff's judgment represented the true value of the stock. Only after the two factions reached an impasse in regard to the value of the minority stock and the minority stockholders filed suit to determine their stock's fair value, which under the Business Corporation Act they had a right to do, did plaintiff by way of legal defense, challenge the constitutionality of the provision of the state act which made it incumbent upon the plaintiff to purchase the dissenting stock. After the demurrer challenging constitutionality was overruled the judicial proceeding continued, involving the sole question of establishing the value of the stock for purpose of transfer to the plaintiff.

That the professional fees were paid in connection with the acquisition of capital stock and not merely in connection with ordinary business transactions of the company is emphasized when it is noted that the instant controversy did not come into being during the regular course of plaintiff's business, but was conceived at the precise time the corporate purpose and authority of the plaintiff was altered. The expenditures associated with the ultimate transfer of approximately one-third of the plaintiff's corporate stock cannot be deemed an expense arising out of ordinary business

operation but must be considered an expenditure directly related to the acquisition of capital stock.

The Court has pointedly considered prorating the fee paid to the attorneys with the thought of deeming that portion of counsel fees paid attributable to resisting the sale of the stock as an expense appearing in the regular course of business. However, upon close scrutiny, such a distinction proves to have no real validity. The fundamental issue between the parties, from the moment the majority stockholders voted to alter the corporate charter and the minority stockholders gave notice of intent to sell the stock, was one to determine the price at which the stock should be sold. The fact that plaintiff's attorneys asserted a legal defense challenging the constitutionality of the statutory provision authorizing the stock sale by the minority at fair value, after negotiations between the majority and the minority as to the stock's value broke down, cannot serve to vary the true nature of the controversy and expenditures incident thereto.

The government is entitled to judgment in both cases. Counsel should submit journal entries which conform with this opinion within fifteen days.